## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALFRED D. MCADAMS,                          :
                                            :          CIVIL ACTION
           Plaintiff,            :
                                            :
    v.                                    :
                                            :
ANDREW M. SAUL,[1]                          :          No. 20-cv-01905-RAL
Commissioner of Social Security,            :
                                            :
           Defendant.            :

### MEMORANDUM OPINION

**RICHARD A. LLORET**                                      **April 19, 2021**
**U.S. MAGISTRATE JUDGE**

      Alfred D. McAdams was denied Social Security benefits by the decision of an Administrative Law Judge ("ALJ"). Mr. McAdams contends that the ALJ's unfavorable decision was reached in error. Pl. Br. at 8–11 (Doc. No. 11).[2] Specifically, Mr. McAdams argues that the ALJ erred by (1) mischaracterizing the opinion of a doctor as suggesting that Mr. McAdams was only temporarily disabled, (2) failing to give proper weight to Mr. McAdams' testimony that his narcotic pain medications caused drowsiness, and (3) failing to give proper weight to the opinions of Mr. McAdams' treating physicians. *Id.* The Commissioner of Social Security ("Commissioner") responds that the ALJ's decision was supported by substantial evidence and comports with all relevant law. Def. Br. at 17 (Doc. No. 19).

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 4, 2019, and is therefore substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d)(1); 42 U.S.C. § 205(g) (Social Security disability actions "survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

[2] Because Mr. McAdams' brief does not contain internal page numbers, I cite to the ECF-generated pagination throughout this memorandum opinion.

After careful review, I agree with the Commissioner and find that the ALJ's decision was supported by substantial evidence. For the reasons set forth below, I deny Mr. McAdams' request for review and affirm the final decision of the Commissioner.

## PROCEDURAL HISTORY

On June 29, 2017, Mr. McAdams filed a claim for supplemental security income ("SSI"), alleging a disability beginning on October 7, 2015. Administrative Record ("R.") 59. His claim was initially denied on August 24, 2017. R. 60.

After this denial, Mr. McAdams requested an administrative hearing before an ALJ. R. 65. The ALJ held the hearing on February 6, 2019, and issued a decision denying Mr. McAdams' claim on March 19, 2019. R. 9, 30. On April 8, 2019, Mr. McAdams appealed the ALJ's unfavorable decision to the SSA's Appeals Council. R. 123. The Appeals Council denied Mr. McAdams' request for review on March 19, 2019. R. 1. On April 14, 2020, Mr. McAdams filed this appeal in federal court. Doc. No. 1.

## FACTUAL BACKGROUND

### A.    The claimant's background.

Mr. McAdams was forty-one years old when he applied for SSI, making him a "younger person" under the regulations at all times relevant to his application. R. 49; 20 C.F.R. §§ 404.1563, 416.963. He has the equivalent of a high school education and previously worked as a landscaper and dump truck driver. R. 20, 57. Mr. McAdams stopped working after October 7, 2015—his alleged disability onset date—when he was involved in a motor vehicle accident. R. 36, 59. On June 29, 2017, Mr. McAdams applied for social security benefits, alleging disability based on back disorders and arthropathy. R. 59.

### B.    The ALJ's decision.

On March 19, 2019, the ALJ issued a decision finding that Mr. McAdams was not disabled as defined by the Social Security Act. R 14. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation.[3]

At step one, the ALJ concluded that Mr. McAdams had not engaged in substantial gainful activity ("SGA") since June 29, 2017—the date that he applied for SSI. R. 14.

At step two, the ALJ determined that Mr. McAdams had two severe impairments: degenerative disc disease of the lumbar spine and right shoulder sprain. *Id*. The ALJ also noted that Mr. McAdams was obese and had documented hyperlipidemia but found that these two impairments were not severe. *Id*.

At step three, the ALJ compared Mr. McAdams' severe impediments to those contained in the Social Security Listing of Impairments (the "Listing").[4] R. 15. The ALJ found that Mr. McAdams' degenerative disc disease did not meet Listing 1.04 (disorders of the spine) and his right shoulder sprain did not meet Listing 1.02B (major dysfunction of a joint). *Id*.

---

[3] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of her past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[4] The regulations contain a series of "Listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work she may have performed in the past. *Id*.

At step four, the ALJ assessed Mr. McAdams' residual functional capacity ("RFC"), or "the most [Mr. McAdams] can still do despite [his] limitations." 20 C.F.R. § 404.1545. After a review of the objective medical evidence and the subjective medical opinion evidence, the ALJ concluded that Mr. McAdams retained the ability to perform light work,[5] subject to certain limitations. R. 15–20. These limitations included that:

> [Mr. McAdams] must be able to shift from sitting to standing at will at the work station . . . must ambulate with a single point cane, no overhead reaching with the dominant right upper extremity, otherwise frequent reaching, handling, fingering, feeling, pushing and pulling and no use of foot controls, no ladders, ropes or scaffolds or crawl, occasionally all other postural maneuvers, no hazards such as unprotected heights or dangerous machinery.

R. 15. Based on Mr. McAdams' RFC, the ALJ found that he is unable to perform his past relevant work as a dump truck driver and landscape laborer. R. 20.

At step five, the ALJ identified three jobs that Mr. McAdams could perform considering his age, education, and work experience, despite his physical limitations: office helper, tooth inspector, and storage rental clerk. R. 21. Because the ALJ identified jobs that Mr. McAdams could perform, she found that Mr. McAdams was "not disabled." R. 21–22.

## DISCUSSION

### A.    The standard of review.

My review of the ALJ's decision is deferential; I am bound by her findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp*

---

[5] As defined by the regulations, light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

*v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing to *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Harftranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing to 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, her disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Evidence is substantial where it consists of "more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to "plenary review." *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 759 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision is supported by substantial evidence. *Payton v. Barnhart*,

416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 455, 447 (3d Cir. 1983)).

    **B.**    **The ALJ did not misinterpret Dr. Williams' opinion.**

    Mr. McAdams' first claim challenges the ALJ's interpretation of Dr. Williams' medical opinion. P. Br. at 8. Mr. McAdams claims that the ALJ erred by reasoning that the opinion suggested that Mr. McAdams was only temporarily disabled.[6] *Id.* The Commissioner counters that the ALJ appropriately characterized Dr. Williams' statements. D. Br. at 5–8. After reviewing the ALJ's opinion and the administrative record, I find that the ALJ did not mischaracterize Dr. Williams' opinion and will deny Mr. McAdams' first claim.

    Dr. Williams began treating Mr. McAdams in October 2017, when Mr. McAdams saw Dr. Williams for an epidural injection of steroids. R. 17, 445. Dr. Williams continued to treat Mr. McAdams through 2019, and provided a medical opinion of Mr. McAdams' ability to do work-related activities in December 2018. R. 610. Dr. Williams opined that, during a normal eight-hour workday, Mr. McAdams could lift and carry items on an occasional and frequent basis no more than ten times per day, that he could stand and walk with normal breaks less than two hours a day, that he could sit less than two hours a day, and that he needed the opportunity to shift at will from sitting to standing or walking. R. 610–14. Dr. Williams further noted that Mr. McAdams could not perform any gainful employment on a continuous and sustained basis. R. 614.

---

[6] It is not clear whether Mr. McAdams' first claim is also challenging the ALJ's decision that Dr. Williams' opinion was not persuasive. *See* Pl. Br. at 8. But, because Mr. McAdams challenges the weight the ALJ assigned to Dr. Williams' opinion in his third claim, I will address that issue in my discussion of his third claim. *See id.* at 10.

In three letters dated December 20, 2018, January 8, 2019, and January 28, 2019, Dr. Williams noted that Mr. McAdams was pursuing further interventional options for symptomatic improvement. R. 615–17. Dr. Williams further noted that Mr. McAdams "remain[ed] significantly limited" in "activities of daily life and working in the labor environment," but noted that his "[l]imitations at current . . . are hopefully temporary as we search for diagnosis and treatment." *Id.* Dr. Williams stated that Mr. McAdams "is unable to be employed in sedentary job activities/roles," and suggested that he "be temporarily placed in the disabled category to be assessed in the future with hopeful return to work . . . despite [his] desire to return to work in a functional capacity." *Id.*

The ALJ reviewed Dr. Williams' treatment records and found that his opinion regarding Mr. McAdams' inability to perform gainful employment was "not persuasive, as it is not fully supported by the record evidence, which has limited findings on objective imaging, limited findings on exam, and the indication that [Mr. McAdams] is 'temporarily' disabled suggests an exacerbation, not an assessment of ongoing condition." R. 19.

"[A]n ALJ may not make speculative inferences from medical reports." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *see also Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (finding that an ALJ erred in drawing an inference from "sporadic and transitory activities," such as shopping and two hunting outings, "to a lack of disabling pain"). Here, the ALJ did not make a speculative inference in finding that Dr. Williams' language indicated that Mr. McAdams "is 'temporarily' disabled." R. 19. Dr. Williams' December 2018 and January 2019 letters note that his current limitations are "hopefully temporary," that Dr. Williams "would suggest/request Mr. McAdams be temporarily

placed in the disabled category to be assessed in the future with hopeful return to work,"
and that "[g]oals remain to return [Mr. McAdams] to work when able." R. 615–17. The
ALJ did not make an inference that Dr. Williams indicated that Mr. McAdams is
temporarily disabled. Rather, the plain language of Dr. Williams' notes indicates that
Dr. Williams believed that Mr. McAdams' disability was temporary and that there is a
possibility that Mr. McAdams can return to work in the future.[7] Therefore, the ALJ did
not mischaracterize Dr. Williams' opinion as indicating that Mr. McAdams was only
temporarily disabled, and Mr. McAdams is not entitled to relief on this claim.[8]

### C.   The ALJ did not err when she disregarded Mr. McAdams' testimony regarding his narcotic pain medication.

Next, Mr. McAdams challenges the ALJ's failure to take into account the sedating
effects of the narcotic pain medication he was prescribed. Pl. Br. at 9. The Commissioner
submits that the ALJ was not required to accept Mr. McAdams' subjective description of
drowsiness because it was unsupported by the medical record. Def. Br. at 9–10. I find
that the ALJ's decision to disregard Mr. McAdams' subjective complaints of drowsiness
was supported by substantial evidence and will deny Mr. McAdams' second claim.

An ALJ will consider the effect of medication on a claimant's ability to work,
including the "type, dosage, effectiveness, and side effects" of that medication, if it "can
reasonably be accepted as consistent with the objective medical evidence and other

---

[7] When filling out the form regarding his medical opinion about Mr. McAdams' ability to do work-related
activities, Dr. Williams also added a note that it is "unknown when/if Mr. McAdams will be able to work
again/or at what capacity. He wishes to return to work." R. 614. This language is not inconsistent with Dr.
Williams' other letters that represented that he was hopeful that Mr. McAdams could return to work.

[8] Mr. McAdams also asserts that, "although it is suggested that this is unnecessary," the ALJ could have
asked for further clarification from Dr. Williams. Pl. Br. at 8. As Mr. McAdams concedes, such
clarification was unnecessary because an ALJ has discretion on whether to re-contact a medical source if
the record before the ALJ is insufficient to determine whether a claimant has a disability. *See* 20 C.F.R. §
419.920b(b)(2). Mr. McAdams makes no argument that the record here was insufficient, and I likewise
will not make any such finding.

evidence." 20 C.F.R. § 404.1529(c)(3); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) (an ALJ is required to afford a claimant's subjective complaints of pain "serious consideration." (quoting *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993))). When an ALJ "fail[s] to provide any explanation for [an] implicit rejection of [plaintiff's] testimony regarding the effects of the medication he took," a reviewing court may remand to the ALJ because it is unclear if the testimony "was not credited or simply ignored." *Stewart v. Sec'y of Health, Educ., and Welfare of U.S.*, 714 F.2d 287, 290 (3d Cir. 1983).

But, "[d]rowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations." *Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002). And, an ALJ's "failure to consider side effects is not error where the only probative evidence is the claimant's own conclusory statements" and those statements are not consistent with the medical evidence. *Schmidt v. Comm'r Soc. Sec.*, 465 F. App'x 193, 199 (3d Cir. 2012) (not precedential); *see also Torres v. Colvin*, No. 15-3973, 2016 WL 7404745, at *11 (E.D. Pa. Nov. 30, 2016) (Sitarski, J.) (finding no error when ALJ did not discuss self-reported effects of claimant's medication because "no medical provider substantiated Plaintiff's inconsistent self-reported side effects"), *report and recommendation adopted*, 2016 WL 7394517 (E.D. Pa. Dec. 21, 2016).

At his hearing before the ALJ, Mr. McAdams testified in response to questioning by his attorney that he took Percocet as needed to deal with his pain. R. 39. Mr. McAdams reported that the Percocet made him "drowsy" and that he "[couldn't] really do anything on [Percocet] because it just makes me drowsy and tired . . . . [s]o I just lay down when I take it." *Id.* In the ALJ's opinion, she noted that Mr. McAdams testified

that "[h]e takes Percocet as needed, throughout the day, which causes drowsiness" but that Mr. McAdams' testimony about the severity of all of his impairments were "not entirely consistent with the medical evidence and other evidence in the record." R. 16.

While the ALJ did not discuss Mr. McAdams' self-reported Percocet side effects, I find that this was not an error due to the absence of any record evidence supporting the allegations of severe drowsiness. Mr. McAdams' brief does not directly cite any evidence for the assertion that "it was noted that Plaintiff experienced significant side effects from [his pain medication] including but not limited to extreme fatigue and drowsiness." Pl. Br. at 6. The paragraph this assertion appears in later cites to Mr. McAdams' treatment with Dr. Williams and notes Dr. Williams' January 28, 2019 opinion regarding Mr. McAdams' ability to work. *Id.* In that January 28 opinion, however, Dr. Williams answered "No" to the following question: "Does this person's condition(s) or medication(s) used in treating his (her) conditions cause significant fatigue or drowsiness likely to impair his (her) ability to perform gainful employment?" R. 614. Therefore, Mr. McAdams cites a medical opinion that discredits his self-reported drowsiness.[9]

Further, a review of Dr. Williams' late 2018 treatment notes reveals no reports of drowsiness as a result of the Percocet prescription. *See* R. 546 (September 18, 2018 treatment notes); R. 530 (November 20, 2018 treatment notes); R. 457 (December 20, 2018 treatment notes). What Dr. Williams' treatment notes do reveal is that the Percocet prescription was meant to be a short-term bridge; in treatment notes dated

---

[9] I am not making any credibility determinations about Dr. Williams' opinion here, but rather pointing out that the medical opinion evidence Mr. McAdams cites in his brief directly contradicts his own complaints of drowsiness.

March 1, 2018,[10] Dr. Williams notes that the Mr. McAdams understood the Percocet prescription was "a one time bridging-dose." R. 577. Further, Dr. Williams' treatment notes reveal that Mr. McAdams had to return to Dr. Williams to receive a new prescription after he ran out and Dr. Williams expected Mr. McAdams to wean off Percocet when possible. *See* R. 530 ("[Mr. McAdams] [i]s doing ok with small dose, short acting narcotics for severe pain. No red flags of misuse/abuse."); R. 537 (Percocet prescription for one month with no refills); R. 463 (December 20, 2018 treatment notes from Dr. Williams stating that Mr. McAdams "[a]grees to goal of weaning off from medications when/as able. Agrees to only take when severe."). The latest-dated Percocet prescription that appears in the record ends on January 19, 2019. R. 464. None of these treatment notes contain statements that Mr. McAdams experienced severe drowsiness as a result of his Percocet prescription.

The record demonstrates that Mr. McAdams' testimony at his hearing is the only evidence pointing to severe drowsiness from his Percocet prescription. These conclusory statements are not consistent with the medical record, which demonstrates that Mr. McAdams did not complain of drowsiness to his physicians, nor did his physicians note any drowsiness. In fact, Dr. Williams—the physician who prescribed Mr. McAdams Percocet—noted that Mr. McAdams did not suffer from medicine-induced fatigue or drowsiness that would impact his ability to work. R. 614. Therefore, the ALJ's failure to consider the side effects of Percocet was not error, and I will deny relief on this claim. *See Schmidt*, 465 F. App'x at 199.

---

[10] Previous treatment notes demonstrate that Mr. McAdams did not take Percocet for pain relief until at least March 2018. *See* R. 586 (November 13, 2017 treatment notes stating that Mr. McAdams took Flexeris, Tylenol #3, diluadid and prednisone" and that he "[h]as used [Percocet] in the past with dental procedure which has helped); R. 580 (December 22, 2017 treatment notes stating that "[Mr. McAdams] denies taking any medications for pain relief.").

### D.   The ALJ's findings on the persuasiveness of proffered medical opinions were supported by substantial evidence.

Finally, Mr. McAdams submits that the ALJ erred by failing to accord proper weight to the medical opinions of his treating physicians, Dr. Williams and Dr. Lanoce. Pl. Br. at 9–10. The Commissioner responds that the ALJ correctly evaluated the opinions of Dr. Williams and Dr. Lanoce under the applicable regulations.[11] Def. Br. at 11–16. I find that substantial evidence supports the ALJ's evaluation of these physicians' opinions, and will deny Mr. McAdams' third claim.

Under the regulations in force at the time of Mr. McAdams' application for benefits,[12] an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources." 20 C.F.R. § 416.920c(a). The regulations note that supportability and consistency "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . to be." *Id.* § 416.920c(b)(2). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 416.920c(c)(2). The

---

[11] Mr. McAdams cites 20 C.F.R. § 404.1527(c)(2) for the proposition that the ALJ should have given controlling weight to the opinions of his treating physicians. As explained in footnote 12, a new set of regulations applies to Mr. McAdams' claim because it was filed after March 27, 2017. Therefore, I will not apply the outdated regulations Mr. McAdams cites to support his third claim.

[12] Mr. McAdams filed for SSI benefits on June 29, 2017. R. 59. The revised regulations governing how an ALJ evaluates medical opinion evidence apply for claims filed on or after March 27, 2017. 20 C.F.R. § 416.920c.

regulations also instruct an ALJ to consider the physician's relationship with a claimant, whether the physician "has received advanced training and education" as a specialist, and other factors such as the medical source's familiarity with other evidence. *Id.* § 416.920c(c)(3)–(5).

The ALJ noted that Dr. Lanoce "wrote that claimant is unable to lift more than 10 pounds or sit, stand or walk more than 15 minutes." R. 19. The ALJ found that this opinion was not persuasive because "it [was] not supported by any examination evidence of the claimant at the time it was written, and is not consistent with Dr. Lanoce's office visit records of claimant's limitations." *Id.* When considering Dr. Williams' opinion, the ALJ noted that Dr. Williams "opined claimant is unable to do even a sedentary job, as he cannot tolerate prolonged sitting longer than 20 minutes, required the ability to weight shift and offload at his discretion, and should be temporarily placed in the disabled category." *Id.* The ALJ found that this opinion was not persuasive because "it is not fully supported by the record evidence, which has limited findings on objective imaging, limited findings on exam, and the indication that claimant is 'temporarily' disabled suggests an exacerbation, not an assessment of ongoing condition." *Id.*

Earlier in the ALJ's opinion, she reviewed the medical record evidence before her. R. 16–18. The ALJ noted that x-ray and CT imaging found "minimal degenerative disc disease at C5–C6" and "mild lower lumbar congenital canal narrowing, disc bulges . . . with mild to moderate neuroforaminal stenosis . . . and moderate right neuroformal stenosis at L4–L5 and moderate right neuroforaminal stenosis at L5-S1." R. 18. The ALJ noted that Dr. Williams' July 2018 exam notes stated that Mr. McAdams exhibited some tenderness upon palpation, that he could walk without an assistive device, and that he

could not perform double leg squats. *Id*. The ALJ also reviewed treatment notes and medical evidence from other physicians, most of which indicated that Mr. McAdams was able to walk and lift light loads. *See id*.

I find that substantial evidence supported the ALJ's decision to find Dr. Lanoce's January 14, 2019 opinion that Mr. McAdams could not sit, stand, or walk for more than fifteen minutes not persuasive. The ALJ correctly noted that Dr. Lanoce's opinion was not supported by contemporaneous examination evidence and that it was inconsistent with his previous treatment notes. R. 19. Dr. Lanoce's opinion was handwritten on a prescription pad and did not cite to any physical examination findings. R. 609. And, as the ALJ noted, Dr. Lanoce's office visit records did not indicate that Mr. McAdams could not sit, stand, or walk for more than fifteen minutes. Instead, the office visit records reflected Mr. McAdams' complaints of pain and note that the symptoms have been "waxing and waning," but do not reflect any physical limitations caused by Mr. McAdams' symptoms or a review of his imaging results. *See* R. 417–18, 493–95, 526–28. Therefore, the ALJ properly addressed Dr. Lanoce's medical opinion with reference to its lack of support and inconsistency with Dr. Lanoce's other treatment notes.

I likewise find that substantial evidence supported the ALJ's decision to find Dr. Williams' December 20, 2018 and January 28, 2019 opinions not persuasive. Both of these opinions stated that Mr. McAdams was incapable of performing even sedentary work, noting that he could not sit or stand longer than twenty minutes at a time, would need to use a cane, could not perform postural activities, and would miss work more than three times per month. R. 610–17. The ALJ rejected these opinions and cited to the objective imaging finding limited impairments, limited exam findings, and language in Dr. Williams' opinion suggesting that Mr. McAdams was suffering a temporary

exacerbation of his condition. R. 19. This reasoning provided substantial evidence for the limited persuasiveness the ALJ assigned to Dr. Williams' opinion.

As noted previously, the imaging evidence in the record demonstrated that Mr. McAdams mostly had minimal, mild, or moderate spinal issues. *See* R. 18. Further, as noted by the ALJ, Dr. Williams' treatment noted demonstrate limited physical exam findings. Treatment notes dated December 20, 2018 indicate that Mr. McAdams was able to walk with no assistive device, that he could heel walk and toe walk without difficulty, and that he had some lumbar range of motion and full and pain-free hip range of motion. R. 462. While these findings indicate some limitations, the ALJ was justified in finding that they did not completely bar Mr. McAdams from working. And, regarding Dr. Williams' suggestion that Mr. McAdams was "temporarily" disabled, I have already explained that the ALJ's interpretation of this statement was reasonable.

Finally, Mr. McAdams submits that Dr. Williams and Dr. Lanoce had opinions regarding his ability to work that were consistent with each other, and thus the ALJ should have found them both persuasive. Pl. Br. at 10. But, he does not address that these opinions were inconsistent with the majority of other medical opinions the ALJ considered. All four of the other opinions that the ALJ considered suggested that Mr. McAdams could perform at least some light duty work, with the ALJ discounting one of these opinions finding that Mr. McAdams could perform medium exertional work. R. 19–20. Under the applicable regulations, the ALJ was entitled to consider the consistency of all of the medical opinions with each other. 20 C.F.R. § 416.920c(c)(2). Although these two opinions were consistent with each other, they were not consistent with the opinions of the other medical providers, nor were they consistent with the other medical evidence of record.

For the reasons above, I find that the ALJ properly addressed the medical opinions of Dr. Williams and Dr. Lanoce and cited appropriate record evidence to support her findings. Therefore, her opinion was supported by substantial evidence because it permits "meaningful judicial review." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). Consequently, I will deny Mr. McAdams' third claim for relief.

## <u>CONCLUSION</u>

Based on the discussion above, I find that Mr. McAdams is not entitled to relief on any of his claims. The ALJ's findings were supported by substantial evidence. She did not misinterpret Dr. Williams' opinion, she did not err in disregarding Mr. McAdams' subjective complaints of medication-induced drowsiness that were unsupported by the record, and her persuasiveness findings on medical opinions were supported by substantial evidence. Therefore, I will deny Mr. McAdams' request for review.

**BY THE COURT:**

*s/Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. MAGISTRATE JUDGE**